## WEST *v.* VAN TUYL.

*(Supreme Court, General Term, Fifth Department. June, 1888.)*

1. EVIDENCE—BOOK OF ENTRIES—DAILY REPORTS OF EMPLOYES.
    Where each person employed in a lumber mill kept tally of his work on a tally-board, indicating for whom it was done, and at the end of the day took the board

to plaintiff's wife, who made the entries from them into a book the same day, giving the amount of work done, and the names of the customers, and footed up the total figures; and where the persons keeping the tally-boards testified to their correctness, and plaintiff and his wife testified they were properly footed up and transcribed in the book, it was admissible in evidence in a suit by the plaintiff against one for whom he was manufacturing the lumber to show the amount of work done, especially when the latter knew how the accounts were kept, and had settled the business for a year and a half on the basis of an account kept in the same manner.

2. CONTRACT—CONSTRUCTION—COVENANT TO REPAIR.

Where a contract provided that plaintiff should take charge of defendant's mill, and should be paid at certain rates for the lumber produced and sold, and that defendant should repair all breakages about the mill not caused by neglect, plaintiff to assist in such repairs without charge, the latter was obliged to give only his personal attention, and defendant is liable for the expense of horses and men employed in repairs.

3. SAME—PART PERFORMANCE—PRO RATA COMPENSATION.

Where plaintiff was to be paid for lumber manufactured and sold by him for defendant, and there was no specified time within which it was to be sold in the contract, and part of the lumber was destroyed by fire, and the contract was terminated by notice of defendant, he can recover a *pro rata* compensation for cutting and sawing the lumber not sold.

Appeal from a judgment on the report of a referee.

These were four actions brought by Clinton West against Thomas Van Tuyl, which were consolidated and tried as one.

*Jay K. Smith,* for appellant.　*M. Rumsey Miller,* for respondent.

DWIGHT, J　The actions (four in number, consolidated and tried as one) were to recover on claims based upon or growing out of a written contract between the parties, for services to be rendered by the plaintiff to the defendant. The work to be done consisted of cutting and hauling the timber from a tract of land belonging to the defendant, and manufacturing it into lumber of various kinds at the defendant's mill. Plaintiff was also to make sales of the product of the mill and of the bark; to do such custom sawing as should offer; to account for all moneys received; and to have his pay at certain rates on the various kinds of lumber and other material sold or produced. The defendant was to repair all breakages about the mill not caused by neglect, and the plaintiff was to assist in making such repairs without charge. The work was to have been done in two years from November 1, 1879; but extensions were made from time to time,—and it was continued until December, 1882, when it was terminated by notice from the defendant. Several other contracts were made between the parties during the three years for particular work outside of but subsidiary to that covered by the principal contract. In February, 1881, the parties had a "partial settlement" of their accounts, resulting in an exchange of receipts "without prejudice." In September, 1882, the parties agreed that the plaintiff should render his account, and the defendant pay for each week's work thereafter at the end of the week. One of the actions was for a balance on four weekly statements; one for work done under special contracts in 1882; one for a balance on the principal contract of August, 1879, and for damages by reason of respondent's failure to furnish proper machinery, and to keep it in repair; and one for the wages, board, and lodging of his men when at work for the defendant in making repairs on the mill, and for work done under special contract made in 1880. The mill and part of the lumber manufactured, were destroyed by fire in November, 1882.

The trial of the four actions consolidated into one involved a revision of the partial settlement of February, 1881, and a full accounting of all the dealings between the parties from that time to the close of the work in December, 1882. The report, embracing a statement of the account, found a balance due from the defendant to the plaintiff of $1,187.59, for which amount, with costs, judgment was ordered for the plaintiff. There were no requests to find by either party, nor any exceptions to any finding of fact or conclusion of law. The only questions, therefore, which are presented by the record on

this appeal are those raised by the defendant's exceptions to rulings by the
referee in the admission and exclusion of evidence. Of these rulings the
most important was that which admitted in evidence the book known in the
case as "Exhibit M," which contained the defendant's account of the work
done in the mill under the principal contract, after the partial settlement in
February, 1881, and before the system of weekly statements was adopted in
September, 1882. The evidence on the part of the plaintiff showed how this
book was kept, and the *data* from which the entries were derived. Each per-
son engaged in the mill, either in sawing, facing, planing, or matching lum-
ber, or in sawing shingles or lath, kept a tally of his work on a planed shingle
or tally-board; putting down the name of the owner of the logs or lumber if
it was custom work, or, if for the defendant, indicating that fact. At the
end of the day these tally-boards were taken to the house, where the book was
kept by Mrs. West, and delivered to her. From these she made the entries,
the same day, of the amount of work done for each customer or for the de-
fendant; giving, as on the tally-board, the name of the customer or person
for whom the work was done, and, opposite, the number of feet of lumber
sawed, planed, etc., and the number of thousands sawed of shingles or lath.
Undoubtedly the entries in the book were not mere transcriptions from those
on the tally-boards, but involved a certain amount of figuring or computation,
at least to the extent of footing up the figures of the latter. Sometimes this
footing was done by the head sawyer; if not, it was done by the persons mak-
ing the entries in the book. These Mrs. West testified she always made, ex-
cept for a period of about three days, when they were made by the plaintiff.
The entries were supported by the evidence of all the sawyers who kept the
tallies on the boards, to the effect that the latter were correctly made, from
correct measurements made by themselves at the time; and by the evidence
of Mrs. West and her husband that the tallies were correctly footed, and these
footings correctly entered in the book as it appeared on the trial. The sev-
eral acts described were done by the persons charged with the several duties,
and in the regular course of their employment. These facts, we think, fairly
bring the case within the reasoning and the rule in the case of *Mayor* v. *Rail-
road Co.*, 102 N. Y. 572, 7 N. E. Rep. 905, which sustains the admission in
evidence of a time-book kept by a general foreman in the employ of the super-
intendent of public works, from reports made to him daily by gang foremen,
of the names of men at work each day, and the time of each man; the ul-
timate fact to be established being the number of days' labor performed in
making the repairs with the defendant was to be charged. In that case the
court (ANDREWS, J.,) say the book was clearly not admissible on the testi-
mony of either the gang foremen alone, or of Wilt (the general foreman, who
made the entries in the book) alone; "but, combining the two, there was—
*First,* original evidence that laborers were employed, and that their time was
correctly reported by persons who had personal knowledge of the facts, and
that their reports were made in the ordinary course of business, and in accord-
ance with the duty of the persons making them, and in point of time
were contemporaneous with the transactions to which the reports related;
and, *secondly,* evidence by the person who received the reports that he cor-
rectly entered them as reported in the time-book, in the usual course of his
business and duty." And the book of the general foreman was held com-
petent evidence as consisting of original *memoranda*. All the elements of
the case thus analyzed are present in the case in hand. The additional cir-
cumstances that footings of the figures on the tally-boards were made by per-
sons who testified that they made them correctly, does not affect the admis-
sibility of the evidence in question. It is of no consequence whether the
footings were made by the persons who set down the figures on the tally-
boards, or by the bookkeeper who entered them in the book, so long as they
were correctly made; and the liability to error was likely to be less in the lat-

ter case than in the former. The argument *ex necessitate* in the case cited applies with at least equal force in this case. It is difficult to see how by any other practicable mode of proof the ultimate fact of the amount of each particular class and description of lumber manufactured in that mill could have been established. There is much force in the suggestion, also, that the book was practically the book of the defendant. There is evidence to show that he knew of the manner in which it was kept; that he had settled the business of the first year and a half on the basis of an account kept in the same manner; and that he received his pay for custom work done in the mill according to the charges contained in this same account. The case of the *Mayor* v. *Railroad Co.*, *supra*, is clearly distinguished by the court from that of *Peck* v. *Valentine*, 94 N Y. 569, cited by the appellant, and in which the same judge wrote the opinion. We think there was no error in the admission in evidence of Exhibit M. It was received like the book in the case of the *Mayor* v. *Railroad Co.*, not as a book of account, but as an original *memoranda*.

The defendant also objected to the admission of evidence in support of the plaintiff's claim for the services of his hired men and teams in repairing breaks, on the ground that by his contract the plaintiff was to assist in repairs without charge. In the absence of any specific finding or request to find, on the subject, we must assume that the referee construed the contract, in that particular as requiring that the plaintiff should give his personal assistance, and not that he should employ men and teams in the work of repairs at his own expense; and this construction we think was clearly the proper one.

We do not think the question of error in the allowance of compensation to the plaintiff for manufacturing lumber not sold is fairly raised by any exception in this record. But if it was so we should be inclined to support the finding of the referee in that respect. There was nothing in the contract which bound the plaintiff to sell the lumber manufactured within any specified time. The limitation of two years applied only to the working up of the logs; and he was prevented from selling any more of the lumber by the destruction of a large part of it by fire, without his fault, and by the peremptory termination of the contract by the notice of the defendant. Under those circumstances the plaintiff was clearly entitled to a *pro rata* compensation for cutting and sawing the lumber not sold. There is no other exception in the case which seems to require consideration. The judgment should be affirmed.

All concur.